IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DAROLD JEFFREY ULEP, #A0235774,<br><br>               Plaintiff,<br><br>    vs.<br><br>FRANCIS X. SEQUEIRA (WARDEN), *et al.*,<br><br>             Defendants. | CIVIL NO. 20-00532 JAO-KJM<br><br>ORDER DISMISSING SECOND AMENDED COMPLAINT IN PART AND DIRECTING SERVICE |

## ORDER DISMISSING SECOND AMENDED COMPLAINT IN PART AND DIRECTING SERVICE

Before the Court is Plaintiff Darold Jeffrey Ulep's ("Ulep") second amended prisoner civil rights complaint ("SAC") brought pursuant to 42 U.S.C. § 1983. Ulep alleges that Defendants,[1] prison officials at the Oahu Community Correctional Center ("OCCC"), violated the Fourteenth Amendment during his current pretrial detention. Specifically, Ulep claims that various supervisory officials at the OCCC failed to train properly staff and inmates on safety protocols

---

[1] Ulep names as Defendants: (1) Warden Francis Sequeira; (2) Deputy Warden Lyle Kawamata; (3) Chief of Security Caesar Altares; (4) Acting Clinical Services Administrator Wendy Bartolome; (5) Residency Section Administrator Lance Rabacal; and (6) "John and Jane Doe ABC Company OCCC Staff." ECF No. 10 at 1–4.

and, as a result, he contracted COVID-19.  The Court has screened the SAC

pursuant to 28 U.S.C. §§ 1915(e) and 1915A(a), and finds that it states claims for

relief against Defendants Sequeira, Kawamata, Altares, Bartolome, and Rabacal in

their individual capacities.  Ulep's other claims are DISMISSED, as specified

below.

## I. <u>STATUTORY SCREENING</u>

The Court is required to screen all in forma pauperis prisoner pleadings

against government officials pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a).

*See Byrd v. Phoenix Police Dep't*, 885 F.3d 639, 641 (9th Cir. 2018).  Claims or

complaints that are frivolous, malicious, fail to state a claim for relief, or seek

damages from defendants who are immune from suit must be dismissed.  *See*

*Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc); *Rhodes v.*

*Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

Screening under 28 U.S.C. §§ 1915(e)(2) and 1915A(a) involves the same

standard of review as that used under Federal Rule of Civil Procedure 12(b)(6).

*See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam).  Under

this standard, a complaint must "contain sufficient factual matter, accepted as true,

to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (internal quotation marks and citation omitted).  A claim is

"plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct.  *See id.*

Rule 12 is read in conjunction with Rule 8(a)(2) when screening a complaint; Rule 8 "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (citation omitted).  The "mere possibility of misconduct," or an "unadorned, the-defendant-unlawfully-harmed-me accusation" falls short of meeting this plausibility standard.  *Id.* at 678–79 (citations omitted); *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

Pro se litigants' pleadings must be liberally construed and all doubts should be resolved in their favor.  *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted).  The Court must grant leave to amend if it appears the plaintiff can correct the defects in the complaint.  *See Lopez*, 203 F.3d at 1130.  When a claim cannot be saved by amendment, dismissal with prejudice is appropriate.  *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## II.  **BACKGROUND**[2]

Ulep tested negative for COVID-19 following his arrest on August 4, 2020.

ECF No. 10 at 7.  The next day, Ulep arrived at the OCCC.  *Id.*  During his initial

intake at the OCCC, Ulep claims that prison staff were wearing masks but no other

personal protective equipment ("PPE").  *Id.*  Ulep then moved within the OCCC to

"Module-19," where prison staff and the "inmate workline" were allegedly not

wearing proper PPE.  *Id.* at 7–8.  Specifically, Ulep claims that the prison staff and

inmates helping them did not change their gloves after "handling" each new

inmate.  *Id.* at 8.  Ulep also claims that, after an inmate left "medical isolation" at

the OCCC, staff did not open windows and doors to increase circulation in the

vacated cell.  *Id.*  Ulep further claims that inmates cleaned and disinfected cells

without proper PPE.  *Id.*  Finally, Ulep claims that inmates wore neither gloves nor

a face shield when serving food to "quarantine inmates and negative inmates."  *Id.*

Ulep contracted COVID-19.  *Id.* at 9.

Ulep alleges that Sequeira, Kawamata, Altares, Bartolome, and Rabacal

violated the Fourteenth Amendment by failing to train staff and inmates on

established rules, regulations, and procedural guidelines, including the Department

---

[2]  Ulep's factual allegations are accepted as true.  *See Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

of Public Safety's ("DPS") COVID-19 "Pandemic Response Plan." *Id.* at 8–9. Ulep seeks $1,150,000 in compensatory damages. *Id.* at 12.

### III.  DISCUSSION

**A.**     **Legal Framework for Claims under 42 U.S.C. § 1983**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege:  (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).  Section 1983 requires a connection or link between a defendant's actions and the plaintiff's alleged deprivation. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978); *Rizzo v. Goode*, 423 U.S. 362, 371–72, 377 (1976); *May v. Enomoto*, 633 F.2d 165, 167 (9th Cir. 1980).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).  Thus, a plaintiff must allege that he suffered a specific injury as a result of a particular defendant's conduct and must affirmatively link that injury to the violation of his rights.

## B.     Eleventh Amendment Immunity

Ulep names all Defendants in their individual and official capacities.  ECF

No. 10 at 1–4.  "The Eleventh Amendment bars suits for money damages in federal

court against a state, its agencies, and state officials acting in their official

capacities," *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007)

(citation omitted); *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89,

101–03 (1984).  It does not bar official-capacity suits for prospective relief to

enjoin alleged ongoing violations of federal law.  *See Wolfson v. Brammer*, 616

F.3d 1045, 1065–66 (9th Cir. 2010); *see also Will v. Mich. Dep't of State Police*,

491 U.S. 58, 71 n.10 (1989).  Nor does it bar suits for damages against state

officials in their personal capacities.  *See Hafer v. Melo*, 502 U.S. 21, 30–31

(1991); *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003).

Ulep's claims against Defendants in their official capacities are barred by the

Eleventh Amendment and DISMISSED with prejudice.  Ulep's claims against

Defendants in their individual capacities are not barred by the Eleventh

Amendment.

## C.     Fourteenth Amendment Claims

To establish a threat-to-safety claim under the Fourteenth Amendment, the

plaintiff must show that:

> (1) [t]he defendant made an intentional decision with respect to
> the conditions under which the plaintiff was confined; (2) [t]hose

6

> conditions put the plaintiff at substantial risk of suffering serious harm; (3) [t]he defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) [b]y not taking such measures, the defendant caused the plaintiff's injuries.

*Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc) (formatting and footnote omitted).

Under 42 U.S.C. § 1983, "supervisory officials are not liable for actions of subordinates on any theory of vicarious liability." *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (internal quotation marks and citation omitted). A defendant may be held liable as a supervisor under 42 U.S.C. § 1983 only "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Nehad v. Browder*, 929 F.3d 1125, 1141 n.14 (9th Cir. 2019) (internal quotation marks and citations omitted). "The requisite causal connection can be established by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." *Felarca v. Birgeneau*, 891 F.3d 809, 820 (9th Cir. 2018) (internal quotation marks and citations omitted). "Thus, a supervisor may be liable in his individual capacity for his own culpable action or inaction in the training,

supervision, or control of his subordinates; for his acquiescence in the

constitutional deprivation; or for conduct that showed a reckless or callous

indifference to the rights of others." *Rodriguez v. County of Los Angeles*, 891 F.3d

776, 798 (9th Cir. 2018) (internal quotation marks and citation omitted).

Ulep alleges that Sequeira, Kawamata, Altares, Bartolome, and Rabacal

violated the Fourteenth Amendment by failing to train prison staff and inmates on

established rules, regulations, and procedural guidelines, including the DPS's

COVID-19 "Pandemic Response Plan." ECF No. 10 at 8–9. Ulep claims that he

contracted COVID-19 because of these failures. *Id.* at 9. These claims may

proceed.

**D.      Doe Defendants**

Ulep names "John and Jane Doe ABC Company OCCC Staff" as

Defendants. ECF No. 10 at 4. The Federal Rules of Civil Procedure do not

authorize or prohibit the use of fictitious parties, although Rule 10 requires a

plaintiff to include the names of all parties in his complaint. Fed. R. Civ. P. 10(a).

Doe defendants are generally disfavored, however, because it is effectively

impossible for the United States Marshal to serve an anonymous defendant. *See*

*Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) ("As a general rule, the use

of 'John Doe' to identify a defendant is not favored." (citation omitted)).

A plaintiff may refer to unknown defendants as John or Jane Doe 1, John or Jane Doe 2, and so on, but he must allege specific facts showing how each doe defendant violated his rights. The plaintiff may then use the discovery process to obtain the names of doe defendants and seek leave to amend to name those defendants, unless it is clear that discovery will not uncover the identities, or that the complaint will be dismissed on other grounds. *See Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (citing *Gillespie*, 629 F.2d at 642).

Ulep names "John and Jane Doe ABC Company and OCCC Staff," ECF No. 10 at 4, but he fails to allege how any specific doe defendant violated the Fourteenth Amendment, *id.* at 7–9. Ulep's claims against these Defendants are DISMISSED.[3] *See Conklin v. Espinda*, Civ. No. 19-00097 JMS-RT, 2019 WL 2397802, at *6 (D. Haw. June 6, 2019) (dismissing claims against unknown defendants where plaintiff failed to explain how each doe defendant personally violated plaintiff's civil rights).

## IV.  <u>CONCLUSION</u>

(1)  Ulep's claims against Defendants in their official capacities are DISMISSED with prejudice.

---

[3]  This dismissal does not foreclose Ulep from later filing an amended pleading that cures the deficiencies in his claims against "John and Jane Doe ABC Company OCCC Staff," subject to the requirements of Fed. R. Civ. P. 15 and orders of this Court.

(2)  Ulep's Fourteenth Amendment claims Sequeira, Kawamata, Altares, Bartolome, and Rabacal in their individual capacities shall be served and require a response after service is perfected.

(3)  Ulep's claims against "John and Jane Doe ABC Company OCCC Staff" are DISMISSED without prejudice.

## V.  <u>SERVICE ORDER</u>

IT IS HEREBY ORDERED:

(1)  The Clerk shall send the U.S. Marshal a copy of this Order, the Second Amended Complaint, ECF No. 10, and one separate completed summons each for Defendants Sequeira, Kawamata, Altares, Bartolome, and Rabacal.  The U.S. Marshal shall open a file and retain these documents for use in the event that any Defendant declines to waive service of the summons.

(2)  Per agreement with the Department of Public Safety, the Clerk shall provide by electronic means to DPS litigation coordinators Laurie Nadamoto, Esq. and Shelley Harrington, Esq.:  (a) a copy of the Second Amended Complaint, ECF No. 10, and any exhibits, and a completed Notice of Lawsuit and Request for Waiver of Service of Summons form separately addressed to Defendants Sequeira, Kawamata, Altares, Bartolome, and Rabacal; and (b) two completed Waiver of Service of Summons forms each for Sequeira, Kawamata, Altares, Bartolome, and Rabacal.

(3)  Defendants Sequeira, Kawamata, Altares, Bartolome, and Rabacal shall have 30 days after the request for waiver of service of summons is sent to return the waiver to the U.S. Marshal, who shall file the waiver with the court.  If Defendants Sequeira, Kawamata, Altares, Bartolome, and Rabacal fail to do so within that time, the U.S. Marshal shall NOTIFY THE COURT, who will direct the U.S. Marshal to personally serve the summons and complaint on Defendants Sequeira, Kawamata, Altares, Bartolome, and Rabacal.  A personally served Defendant will be required to pay the costs of service.

(4)  Defendants Sequeira, Kawamata, Altares, Bartolome, and Rabacal shall file a response to the Second Amended Complaint within 60 days after electronic service if formal service is waived, or 45 days if service of the summons is not waived.

(5)  Ulep shall notify the court within one week of any change of address. This notice shall contain only information about the change of address and its effective date and shall not include requests for other relief.  Failure to do so may result in dismissal of the action for failure to prosecute under Federal Rule of Civil Procedure 41(b).

(6)  After Defendants Sequeira, Kawamata, Altares, Bartolome, and Rabacal have filed a response to the First Amended Complaint, Ulep's documents are deemed served on any Defendant or their attorney(s) who participate in the court's

Case Management Electronic Case Filing (CM/ECF) system.  The U.S. Marshal is

not responsible for serving documents after service of the operative pleading.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, March 9, 2021.



Jill A. Otake
United States District Judge

*Ulep v. Sequeira, et al.*, Civil No. 20-00532 JAO-KJM; ORDER DISMISSING SECOND AMENDED
COMPLAINT IN PART AND DIRECTING SERVICE