IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DAROLD J. ULEP,<br><br>Plaintiff,<br><br>vs.<br><br>FRANCIS X. SEQUEIRA (WARDEN),<br>et al.,<br><br>Defendants. | CIVIL NO. 20-00532 JAO-KJM<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Darold J. Ulep ("Ulep") brings this suit pursuant to 42 U.S.C. § 1983 alleging that five supervisory prison officials violated his constitutional rights under the Fourteenth Amendment during his pretrial detention at the Oahu Community Correctional Center ("OCCC").[1] ECF No. 10. Specifically, Ulep

---

[1] Ulep names as defendants: (1) Warden Francis X. Sequeira; (2) Deputy Warden Lyle Kawamata; (3) Chief of Security Caesar Altares; (4) Acting Clinical Services Administrator Wendy Bartolome; and (5) Residency Section Administrator Lance Rabacal ("Defendants"). ECF No. 10 at 1–4. Although Ulep also named as defendants "John & Jane Doe ABC & Company," *id.* at 1, 4, the Court previously dismissed any claims against these additional defendants, *see* ECF No. 12 at 8–9.

1

Case 1:20-cv-00532-JAO-KJM   Document 55   Filed 02/17/22   Page 2 of 14   PageID #: 243

alleges that Defendants did not properly train staff and inmates on safety protocols and, as a result, he contracted COVID-19. *Id.* at 9.

Before the Court is Defendants' Motion for Summary Judgment. ECF No. 44. Defendants argue that Ulep failed to exhaust available administrative remedies prior to filing this suit as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). ECF No. 44-1. The Court elects to decide Defendants' Motion without a hearing pursuant to Rule 7.1(c) of the Local Rules of Practice for the United States District Court for the District of Hawaii ("Local Rules").

Because Ulep fails to rebut Defendants' Motion by showing that he fully exhausted available administrative remedies prior to filing this action or that those remedies were effectively unavailable to him, Defendants' Motion for Summary Judgment is GRANTED.

## I.  BACKGROUND

Ulep is in the custody of the State of Hawaiʻi Department of Public Safety ("DPS"), and he seeks relief under 42 U.S.C. § 1983. *See* ECF No. 10 at 1; VINE, https://www.vinelink.com/classic/#/home/site/50000 (select "Find an Offender"; then enter "Ulep" in "Last Name" field and "Darold" in "First Name" field) (last visited Feb. 17, 2022). Ulep commenced this suit on or about November 25, 2020, when he signed a transmittal letter that was mailed with his Complaint. *See* ECF Nos. 1, 1-1. Ulep alleged in the Complaint that the State of Hawaiʻi, the DPS, and

the Department of Health violated his constitutional rights under the Eighth Amendment when they failed to follow policies and procedures, and, as a result, Ulep contracted COVID-19 while he was a pretrial detainee at the OCCC in August 2020. ECF No. 1 at 5.

The Court dismissed the Complaint with partial leave granted to amend. ECF No. 6. The Court concluded that Ulep's claims against the State of Hawai‘i, the DPS, and the Department of Health were barred by the Eleventh Amendment. *Id.* at 5–6. The Court dismissed with prejudice any claims against these defendants. *Id.* at 6, 9–10. The Court granted Ulep partial leave to amend his pleading to name a proper defendant or defendants. *Id.* at 6, 10. The Court explained that any claims based on the conditions of Ulep's pretrial detention at the OCCC must be based on the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment's Cruel and Unusual Punishment Clause. *Id.* at 6–8.

Ulep signed his First Amended Complaint ("FAC") on December 20, 2020. ECF No. 7 at 9–10. In the FAC, Ulep again named as defendants the DPS and the State of Hawai‘i, and he added the OCCC. ECF No. 7 at 1–2. He once again asserted that these defendants had violated the Eighth Amendment. *Id.* at 5–6.

On January 14, 2021, the Court dismissed the FAC with partial leave granted to amend. ECF No. 9. The Court explained that any claims against the DPS, the State of Hawai‘i, and the OCCC were barred by the Eleventh

3

Amendment. *Id.* at 5–6. The Court gave Ulep another opportunity to amend his pleading to name a proper defendant or defendants. *Id.* at 6, 10.

On January 24, 2021, Ulep gave the SAC to prison officials for mailing. *See* ECF No. 10-2 at 2. Ulep alleged that Defendants violated his constitutional rights under the Fourteenth Amendment during his pretrial confinement at the OCCC in August 2020. *Id.* at 7–9. According to Ulep, he contracted COVID-19 because Defendants did not "properly train[] staff and health unit staff [on] security requirements and safety regulations[.]" *Id.*

On March 9, 2021, the Court dismissed the SAC in part and directed service of Ulep's claims against Defendants in their individual capacities. ECF No. 12. The Court dismissed with prejudice Ulep's claims for money damages against Defendants in their official capacities. *Id.* at 6, 9. The Court decided that Ulep's threat-to-safety claims against Defendants in their individual capacities, however, could proceed. *Id.* at 6–8.

Defendants filed their Answer on May 19, 2021, ECF No. 40, and their Motion for Summary Judgment on December 7, 2021, ECF No. 44. In their Motion, Defendants assert that summary judgment is warranted because Ulep failed to fully exhaust available administrative remedies before filing suit. ECF No. 44-1 at 1–2. Ulep did not submit an opposition in accordance with this Court's Local Rules. Instead, he signed one "Statement" on January 10, 2022, ECF No. 50

at 5, and another "Statement" on January 14, 2022, ECF No. 51 at 5. In these documents, Ulep again describes his experiences at the OCCC, but does not address Defendants' exhaustion of remedies argument. *See* ECF Nos. 50, 51. On February 3, 2022, Defendants submitted a Statement affirming that they do not intend to file a reply. ECF No. 52.

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). "A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). In a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party. *See State Farm Fire & Cas. Co. v. Martin*, 872 F.2d 319, 320 (9th Cir. 1989) (per curiam).

Once the moving party has met its burden of demonstrating the absence of any genuine issue of material fact, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See T.W. Elec.*, 809 F.2d at

630; Fed. R. Civ. P. 56(c).  The opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support its legal theory.  *See Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).  The nonmoving party cannot stand on its pleadings, nor can it simply assert that it will be able to discredit the movant's evidence at trial.  *See T.W. Elec.*, 809 F.2d at 630; *Blue Ocean Pres. Soc'y v. Watkins*, 754 F. Supp. 1450, 1455 (D. Haw. 1991).

If the nonmoving party fails to assert specific facts, beyond the mere allegations or denials in its response, summary judgment, if appropriate, shall be entered.  *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884 (1990); Fed. R. Civ. P. 56(e).  There is no genuine issue of fact if the opposing party fails to offer evidence sufficient to establish the existence of an element essential to that party's case.  *See Celotex*, 477 U.S. at 322; *Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994); *Blue Ocean*, 754 F. Supp. at 1455.

In considering a motion for summary judgment, "the court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence."  *T.W. Elec.*, 809 F.2d at 631 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986)) (footnote omitted).  Inferences must be drawn in favor of the nonmoving

party. *See id.* However, when the opposing party offers no direct evidence of a material fact, inferences may be drawn only if they are reasonable in light of the other undisputed background or contextual facts and if they are permissible under the governing substantive law. *See id.* at 631–32. If the factual context makes the opposing party's claim implausible, that party must come forward with more persuasive evidence than otherwise necessary to show there is a genuine issue for trial. *See Bator v. Hawaii*, 39 F.3d 1021, 1026 (9th Cir. 1994) (citing *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987)).

## III. DISCUSSION

### A. Exhaustion of Administrative Remedies

"The Prison Litigation Reform Act of 1995 (PLRA) mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." *Ross v. Blake*, 578 U.S. 632, 635 (2016) (quoting 42 U.S.C. § 1997e(a)); *see Fordley v. Lizarraga*, 18 F.4th 344, 351 (9th Cir. 2021). As the Supreme Court has stated, "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citation omitted).

"Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into

court." *Id.* at 204; *see Fuqua v. Ryan*, 890 F.3d 838, 844 (9th Cir. 2018). "This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." *Jones*, 549 U.S. at 204 (citation omitted); *see Fuqua*, 890 F.3d at 844.

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006) (footnote omitted); *see Fuqua*, 890 F.3d at 844. "[P]risoners are obligated to navigate all a prison's administrative review process 'regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible.'" *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005) (quoting *Booth v. Churner*, 532 U.S. 731, 739 (2001)). Moreover, "a prisoner must exhaust his administrative remedies for the claims contained within his complaint before that complaint is tendered to the district court." *Rhodes v. Robinson*, 621 F.3d 1002, 1005 (9th Cir. 2010).

"The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" *Ross*, 578 U.S. at 648. Thus, "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 642 (quoting *Booth*, 532 U.S. at 738).

8

The Supreme Court has outlined three "circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 643 (citation omitted).  Failure to exhaust may be excused when:  (1) the "administrative procedure . . . operates as a simple dead end — with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) the "administrative scheme . . . [is] so opaque that it becomes, practically speaking, incapable of use" so that "no ordinary prisoner can make sense of what it demands"; and (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643–44 (citations omitted); *see Fordley*, 18 F.4th at 351.

Failure to exhaust is an affirmative defense.  *See Jones*, 549 U.S. at 216.  "The defendant bears the burden of showing that an administrative process was available to the inmate and that the inmate failed to exhaust it." *Fordley*, 18 F.4th at 350–51 (citation omitted).  "Once the defendant shows that such a remedy was generally available, the burden shifts to the inmate to show that something in his particular case made the generally available administrative remedies effectively unavailable to him." *Id.* at 351 (citation omitted).

B.   **DPS Administrative Remedies**

As the Ninth Circuit has stated, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Fuqua*, 890 F.3d at 845

(internal quotation marks and citations omitted).  Here, Policy No. COR.12.03 (eff. July 1, 2015) contained in the DPS's Corrections Administration Policy and Procedures spells out an inmate grievance program.  ECF No. 45-2.  The purpose of the program is to allow an inmate "to seek a formal and constructive process to address inmate complaints relating to any aspect of his/her conditions of confinement[.]"  *Id.* at 1, ¶ 1.0.  The program covers inmates housed in any DPS-operated correctional facility in the State of Hawaiʻi and incidents arising in any such facility.  *Id.* at 2, ¶ 4.1.  Inmates "are required to utilize the [program] to address any complaints or concerns."  *Id.* at 2, ¶ 4.2–.3.

      The program has three levels, or steps.  "The first level of review for the Inmate Grievance is the Section Supervisor, the next level for appeal is the Warden/Branch/Core Program Administrator and the final review level is the Division Administrator (DA)."  *Id.* at 6, ¶ 8.3.d.  "Inmates must exhaust their administrative remedies before filing litigation for claimed violations of federally protected prisoner rights."  *Id.* at 2, ¶ 4.7 (emphasis and citation omitted).

      At step one, an inmate generally must file a grievance within "fourteen (14) calendar days from the date on which the basis of the complaint/grievance occurred."  *Id.* at 4, ¶ 8.1.  "Grievance" is defined as "[a] written complaint concerning an inmate's conditions of confinement, treatment, frustrations and claimed rights' violations."  *Id.* at 1, ¶ 3.3.

Once an inmate files a grievance, a response is due within twenty working days. *Id.* at 7, ¶ 10.1. If the inmate does not receive a response within twenty days, "the inmate may consider the absence of a response as a denial at that level. The result is that the inmate is free to proceed to the next step and no response will be forthcoming to the unanswered step/appeal." *Id.* at 8, ¶ 10.4.

If an inmate is not satisfied with the response or lack of response to a grievance at step one, the inmate may submit an appeal to the Warden/Branch/Core Program Administrator. *Id.* at 8, ¶ 10.5. The Warden/Branch/Core Program Administrator also has twenty days to respond to the appeal at step two. *Id.*

If an inmate is dissatisfied with the response to the appeal at step two, the inmate may appeal to the Division Administrator, who likewise has twenty working days to respond at step three. *Id.* at 8, ¶ 10.6. "Appeals to the DA [are] the final and ultimate recourse in the Administrative Remedy Process." *Id.* at 8, ¶ 10.7. If the twenty working days have lapsed without a response from the Division Administrator, "the grievance/appeal process [is] considered exhausted." *Id.*

After an inmate files a grievance, a Facility Inmate Grievance Officer is required to document it. *Id.* at 3, ¶ 5.4. Grievances must be entered into the Corrections Information Management System — that is, Offendertrak. *Id.* at 3,

¶ 5.8.  Prison officials are obligated to keep copies of grievances and appeals in electronic or hard copy format for a minimum of three years after the final response is issued to the grievant.  *Id.* at 3, ¶ 5.7.

**C.     Analysis**

Defendants submitted in support of their Motion a copy of Policy No. COR.12.03 describing the three-step grievance process set forth above.  ECF No. 45-2.  They also submitted a declaration from Charles Laux, an Inmate Grievance Specialist with the DPS.  ECF No. 45-1.  Laux states that he "reviewed all of the grievances submitted by Darold Ulep between August 4, 2020 and January 29, 2021."  *Id.* at 2.  Based on this review, Laux reports that "Ulep did not submit any Step 3 grievance during that time period."  *Id.*  Defendants have therefore shown that the three-step grievance process was available to Ulep, and Ulep failed to exhaust "the final and ultimate recourse in the Administrative Remedy Process" before he commenced this action.  ECF No. 45-2 at 8, ¶ 10.7; *see Woodford*, 548 U.S. at 90–91; *Rhodes*, 621 F.3d at 1005; *Long v. Sugai*, Civ. No. 19-00235 JMS-RT, 2020 WL 3317608, at *4 (D. Haw. June 18, 2020) (stating that defendants met their initial burden by showing that plaintiff "never filed a Step 3 grievance").

At this point, the burden shifts to Ulep.  To survive summary judgment, Ulep must show either that he exhausted available remedies or that those remedies were effectively unavailable to him.  *See Fordley*, 18 F.4th at 351 ("Once the

defendant shows that such a remedy was generally available, the burden shifts to the inmate to show that something in his particular case made the generally available administrative remedies effectively unavailable to him." (citation omitted)).  Ulep has not met this burden for at least two reasons.

First, Ulep failed to file an opposition to Defendants' Motion in accordance with the Local Rules.  *See* LR56.1(e) ("Any party who opposes the motion shall file and serve with the opposing documents a separate document containing a single concise statement that admits or disputes each fact set forth in the movant's concise statement.").  The fact that Ulep is appearing pro se does not excuse him from complying with the Court's rules.  *See* LR81.1 ("Pro se litigants shall abide by all local, federal, and other applicable rules and/or statutes.").

Second, the documents that Ulep did submit do not show that he satisfied the exhaustion requirement.  In his two Statements, Ulep recounts the events that he allegedly experienced at the OCCC.  *See* ECF Nos. 50, 51.  He does not contend, much less show, that he exhausted the DPS's three-step grievance process or that administrative remedies were effectively unavailable to him.  *See Kealoha v. Harrington*, Civ. No. 20-00309 JMS-RT, 2021 WL 2325636, at *7 (D. Haw. June 7, 2021) ("Plaintiff failed to exhaust his administrative remedies . . . because he did not properly make use of the available administrative procedures.").  Even viewing the record in the light most favorable to Ulep, he has not shown that he satisfied

13

the exhaustion requirement. *See Oliver v. Asuncion*, Civ. No. 18-00355 JAO-RT, 2019 WL 4417468, at *4 (D. Haw. Sept. 16, 2019) ("Viewing the record in the light most favorable to Plaintiff, it is clear that he brought this suit before fully exhausting his administrative remedies."). And so, summary judgment in favor of Defendants is warranted.

## IV. CONCLUSION

Defendants' Motion for Summary Judgment is GRANTED. The Second Amended Complaint is DISMISSED without prejudice for Ulep's failure to exhaust available prison administrative remedies. The Clerk is DIRECTED to enter judgment in favor of Defendants and close the case file.

IT IS SO ORDERED.

DATED: Honolulu, Hawaiʻi, February 17, 2022.



Jill A. Otake
United States District Judge

Civil No. 20-00532 JAO-KJM, *Ulep v. Francis X. Sequeira (Warden), et al.*; ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT